K<small>ATZ</small>M<small>ELINGER</small>
280 M<small>ADISON</small> A<small>VENUE</small>, S<small>UITE</small> 600
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10016
www.katzmelinger.com

| | |
|---|---|
| Katherine Morales<br>Katz Melinger PLLC | t: 212.460.0047<br>f: 212.428.6811<br>kymorales@katzmelinger.com |

September 28, 2019

**Via ECF**
Honorable Vincent L. Briccetti
United States District Court
Southern District of New York
300 Quarropas Street, Room 630
White Plains, NY 10601

      Re:    *Matthew Weil v. Mark D. Levy Horticultural Services, LLC, et al.,*
              <u>Civil Action No. 7:19-cv-04493-VB</u>

Dear Judge Briccetti:

      We are attorneys for Plaintiff in this matter, and we write with the consent of Defendants for settlement purposes to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"); claims for wage statement and payroll notice violations pursuant to the NYLL; and a fraudulent filing of information returns claim pursuant to 26 U.S.C. § 7434. The parties write to respectfully request that the Court approve the parties' FLSA settlement agreement, a copy of which is attached hereto as **Exhibit 1**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

      1. <u>Background</u>

      This matter arises out of Matthew Weil's ("Weil" or "Plaintiff") employment with Mark D. Levy Horticultural Services, LLC ("MDLHS"). Plaintiff also alleged that he was also employed by individual Defendants Mark Levy, Sr. ("Levy, Sr.") and Mark Levy, Jr. ("Levy, Jr.") (collectively with MDLHS, "Defendants"), allegations which Defendants denied.

      On May 16, 2019, Plaintiff filed a putative collective and class action complaint against Defendants, asserting claims under the FLSA, NYLL, and 26 U.S.C. § 7434. On June 28, 2019, the Court referred this matter to mediation and ordered the parties to produce certain discovery in anticipation of the mediation. Defendants produced Plaintiff's time, pay and related records, while Plaintiff produced his own records of his work hours, copies of checks, cash payment envelopes, and paystubs.

On September 24, 2019, the parties attended a mediation session with a Court-appointed mediator John Harris, and ultimately agreed to settle Plaintiff's FLSA claims for the total sum of $7,500.00 (the "FLSA Settlement Agreement"). The parties also agreed to enter into a second settlement agreement to settle Plaintiff's non-FLSA claims (the "Non-FLSA Settlement Agreement"). Although the parties have not submitted a copy of the Non-FLSA Settlement Agreement along with this letter, the parties are prepared to submit the Non-FLSA Settlement Agreement to the Court should Your Honor deem it necessary. The process of parties to an FLSA matter separately agreeing to a private confidential agreement addressing non-FLSA claims, not subject to judicial review, has been expressly approved by several courts post-*Cheeks*. *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088, at *4 (S.D.N.Y. Apr. 28, 2017) ("such a bifurcated settlement agreement is permissible" under Cheeks).

As explained in further detail below, the parties respectfully aver that the proposed FLSA Settlement Agreement is fair, reasonable, and equitable.

2. Plaintiff's Overtime Claims Pursuant to the FLSA

Plaintiff was as an irrigation technician and laborer at MDLHS from in or around March 2017 until in or around December 2018. Plaintiff alleges that from in or around March 2017 until in or around December 2018, he regularly worked Mondays through Fridays from between 7:00 a.m. and 8:00 a.m. to between 5:00 p.m. and 6:00 p.m., for an average of approximately fifty (50) hours worked per week. Plaintiff further alleges that in or around December, January, and February of each calendar year, Plaintiff regularly worked Mondays through Fridays from approximately 7:15 a.m. to between 4:00 p.m. and 5:00 p.m., for an average of approximately forty-six and twenty-five hundredths (46.25) hours worked per week.

Plaintiff alleged that he regularly worked more than forty (40) hours per week, and that Defendants allegedly failed to compensate Plaintiff with the requisite overtime wages. Plaintiff further alleged that Defendants compensated Plaintiff at a rate of $14.00 per hour for all hours worked and failed to compensate him with overtime premiums for all hours worked in excess of forty (40) per week. Plaintiff also claimed that Defendants automatically deducted thirty (30) minutes per day from Plaintiff's compensable time for meal breaks even though Plaintiff was not afforded meal or rest breaks throughout his employment.

3. The Settlement Amount Accounts for Litigation Risk and Compensates Plaintiff for Substantial Alleged Damages

Based on a week-by-week analysis of the time records maintained by Defendants as well as the time records maintained by Plaintiff, Plaintiff estimated that his alleged damages amounted to approximately $12,342.26 in unpaid overtime wages and $12,342.26 in liquidated damages, for a total of $24,684.52 due to Plaintiff for Defendants' violations of the FLSA, exclusive of interest, costs, and attorneys' fees.

However, Defendants adamantly disputed Plaintiff's claims as well as his calculation of damages for Defendants' overtime violations. First, Defendants asserted, and Plaintiff disputed, that Plaintiff began his employment in or around May 2017, not March 2017, as alleged by Plaintiff. Moreover, Defendants alleged that the time records of Plaintiff's work were

contemporaneous and accurate records of Plaintiff's hours worked, and that, as a result, Plaintiff would be unable to meet his burden of establishing that the records of Plaintiff's work at MDLHS are inaccurate. Defendants also argued that the manner in which Plaintiff was compensated was particular to Plaintiff, and that, as a result, Plaintiff would not be able to meet the requirements for class action certification.

Moreover, although Plaintiff asserted that he would pursue this action as a class action lawsuit if the mediation did not result in a settlement, Defendants expressed serious concern about their ability to afford a substantial judgment and/or settlement if this matter were to be pursued as a class action. Specifically, MDLHS alleged that it is currently negotiating with the Internal Revenue Service ("IRS") over certain payments the IRS claims it is owed, and that Defendants lack the financial resources to afford a substantial class action judgment and/or settlement. As a result, Defendants contended that if Plaintiff proceeded with a class action lawsuit, Plaintiff and the class would be unable to collect on a judgment in the event they prevailed on all of their claims. Moreover, it bears mentioning that prior to the mediation, counsel for the parties convened to review Defendants' tax returns for the past three (3) years as well as documents related to the IRS proceedings.

While the parties generally continue to express opposing views on the likely outcome of this matter if it were to be pursued as a class action, the parties understand that the complex factual issues in this matter would likely require a trial, and that each party would expend significant time and costs to proceed through formal discovery and prepare for trial. While the parties have agreed to a settlement, there remains significant disagreement between the parties over the amount of alleged overtime hours worked by Plaintiff; the amount and manner in which Plaintiff was compensated; and whether Plaintiff will be able to meet the requirements for class action certification. With such uncertainty on both sides, the risk to Defendants of a substantial judgment against them, the risk to Plaintiff of failing to prevail on all of his claims or being unable to collect on a judgment in the event he does prevail on all of his claims, the amount agreed to by the parties represents a fair and reasonable settlement at such an early stage of the litigation.

## The Proposed Settlement Should Be Approved

1. The settlement amount is fair and reasonable

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel and the settlement amount, $7,500.00, results in a recovery to Plaintiff of $4,580.00, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff would not prevail on all of his claims after a trial; and the risk that Plaintiff would not be able to collect on a judgment.

2. <u>The settlement agreement was the result of arm's length negotiations by the parties</u>

The proposed settlement is also the product of negotiation between parties represented by competent counsel and with the assistance of Court ordered mediation. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information uncovered prior to the mediation and the assistance of a mediator, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through informal discovery, the parties have gathered and exchanged information relevant to the claims and defenses in this matter and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by MDLHS, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer working for MDLHS; (ii) Defendants strongly contest Plaintiff's estimation of damages; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d at 335-36.

3. <u>Plaintiff's counsel's fees are reasonable</u>

Lastly, Plaintiff and his counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable, as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $630.00[1] as reimbursement for costs and expenses and $2,290.00 in fees. Plaintiff's contingency fee engagement agreement provides that Plaintiff's counsel is entitled to recover, out of Plaintiff's

---

[1] The costs and expenses are as follows: $400.00 for the filing fee and $230.00 for service of process costs.

settlement amount, fees totaling one-third of the net amount of any monies recovered on behalf of Plaintiff, after deducting costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102, at *10 (S.D.N.Y. Dec. 6, 2013) (amount of fees "is of little consequence when fees are consensual") (citation and internal quotation marks omitted).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit 2**, Plaintiff's counsel has spent a total of 54.4 hours on this matter, as follows: Kenneth Katz, 4.9 hours; and Katherine Morales, 49.5 hours. Plaintiff's counsel's hourly rates - $425.00 and $275.00, respectively - are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (internal quotation marks and citation omitted).

Mr. Katz is the sole member of Katz Melinger PLLC, a boutique firm with substantial experience representing plaintiffs in wage and hour matters. Mr. Katz earned his B.A. in 2000 from the State University of New York at Albany, and his J.D. in 2003 from Hofstra University School of Law, with an award recognizing his achievements in the employment law field. Mr. Katz was admitted to practice in the courts of New York in 2004, and has focused his practice in litigation since 2003.

Ms. Morales earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017, and was admitted to practice in New York in 2018. Prior to joining the firm, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits.

The $2,290.00 fee sought by Plaintiff's counsel is well below their "lodestar" amount of $15,695.00, and is therefore reasonable. See e.g. *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, at *27-28 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases). As set forth herein, Plaintiff's counsel negotiated a highly favorable settlement for Plaintiff, in which Plaintiff recovered a significant portion of his alleged compensatory damages, which were strongly contested by Defendants, at an early stage of the lawsuit. Moreover, by reaching a settlement with Defendants, Plaintiff avoids the risks of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails in his claims, attempting to enforce a judgment against Defendants.

Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request to be allowed to submit a stipulation of discontinuance with prejudice as to Plaintiff consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

*/s/ Katherine Morales*
Katherine Yesenia Morales
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
(212) 460-0047
kymorales@katzmelinger.com
*Attorneys for Plaintiff*